# EXHIBIT 1

# STATE OF NORTH CAROLINA

File No. 14-CVS-20175

<u>MECKLENBURG</u>   County

In The General Court of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name of Plaintiff*<br><br>Carolina Restaurant Group, Inc.<br>*Address*<br>8040 Arrowridge Boulevard<br>*City, State, Zip*<br>Charlotte, North Carolina 28273 | **CIVIL SUMMONS**<br><br>☐ **Alias and Pluries Summons** |

<b>VERSUS</b>

G.S. 1A-1, Rules 3, 4

| | |
|---|---|
| *Name of Defendant(s)*<br>PepsiCo Sales, Inc. | *Date Original Summons Issued*<br><br>*Date(s) Subsequent Summon(es) Issued* |

---

**To Each of The Defendant(s) Named Below:**

| *Name And Address of Defendant*<br>PepsiCo Sales, Inc.<br>c/o CT Corporation System, Registered Agent<br>150 Fayetteville Street, Box 1011,<br>Raleigh, North Carolina 27601 | *Name And Address of Defendant* |
|---|---|

---

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)*<br>Brian A. Kahn<br>Brian P. Troutman<br>McGuireWoods LLP<br>201 N. Tryon St., Suite 3000<br>Charlotte, NC 28202 | *Date Issued* 11/7/14 | *Time* 2:15 ☐ AM ☒ PM |
|---|---|---|
| | *Signature* *Amy Boyle* | |
| | ☒ Deputy CSC  ☐ Assistant CSC | ☐ Clerk of Superior Court |

| | *Date of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC | ☐ Clerk of Superior Court |

**NOTE TO PARTIES:** *Many Counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01

© 2001 Administrative Office of the Courts

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT

| Date Served | Time Served | ☐ AM ☐ PM | Name of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT

| Date Served | Time Served | ☐ AM ☐ PM | Name of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to person named below.

Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name of Sheriff (Type or Print) |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative of the Courts

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

CAROLINA RESTAURANT GROUP, INC.,

    *Plaintiff,*

v.

PEPSICO SALES, INC.

    *Defendant.*

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14-CVS-*20175*

**COMPLAINT**

Plaintiff Carolina Restaurant Group, Inc. ("CRG" or "Plaintiff"), complaining of Defendant PepsiCo Sales, Inc. ("Pepsi" or "Defendant"), alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff CRG is a corporation organized and existing under the laws of the State of North Carolina with an office and place of business at 8040 Arrowridge Boulevard, Charlotte, North Carolina 28273.

2.    Defendant Pepsi is a corporation organized and existing under the laws of State of Delaware with a registered address at 150 Fayetteville Street, Box 1011, Raleigh, North Carolina 27601 and an office and place of business at 700 Anderson Hill Road, Purchase, New York 10577.

3.    Pepsi conducts business in the State of North Carolina.

4.    This Court has jurisdiction over the subject matter of this action pursuant to N.C. Gen. Stat. § 7A-240, § 7A-243, and § 1-253.

5.    This Court has personal jurisdiction over defendant named in this action pursuant to N.C. Gen. Stat. § 1-75.4.

6.     Venue is proper in this Court pursuant to N.C. Gen. Stat. §1-79, § 1-80, and § 1-82.

## GENERAL ALLEGATIONS

### Formation of the Contract Between CRG and Pepsi

7.     CRG is a small regional franchisee of Wendy's Company ("Wendy's) operating Wendy's quick-service restaurants in North Carolina and South Carolina.   As a Wendy's franchisee, CRG offers food and beverage selections known for their distinctive flavor profile, wholesome, high-quality hamburgers and other food options with fast, friendly service.

8.     Pepsi is a supplier of beverage products and is part of a family of companies constituting one of the world's largest beverage suppliers with billions of dollars in revenues and profits.

9.     Prior to August 1, 1998, CRG entered into negotiations with Pepsi's predecessor in interest, Pepsi-Cola Company, related to the furnishing of postmix fountain beverage products for CRG's Wendy's franchises.   Specifically, Pepsi proposed to be the exclusive furnisher of postmix fountain beverage products poured in CRG's Wendy's franchises.

10.     CRG accepted Pepsi's proposal to furnish postmix fountain beverage products for CRG's Wendy's franchises.

11.     Thus, on or about August 1, 1998, CRG and Pepsi entered into an agreement concerning CRG's purchase of Pepsi's products (as amended from time to time, the "Agreement").

12.     Pursuant to the Agreement, CRG agreed to sell Pepsi products in its Wendy's franchises subject to certain conditions and assumptions.

2

13.     The "Term of the Agreement" is defined on Page 2 of the Agreement as "the period beginning on the Effective Date and expiring on the later of (i) July 31, 2008 and (ii) the date on which CRG has purchased 10,000,000 Gallons."

14.     Under the express terms of the Agreement, CRG is allowed to terminate its relationship with Pepsi through application of the Permitted Termination clause. In pertinent part, Page 7 of the Agreement provides:

> Notwithstanding any other provision of this Agreement to the contrary, CRG shall have the right to terminate this Agreement ('a Permitted Termination') shall not be a Default, upon 90 days' prior notice to [Pepsi] in the event that CRG has made the reasonable, good faith determination that the continuation of this Agreement will materially and adversely affect the ability of CRG to achieve the Outlet Growth Targets.

15.     Page 2 of the Agreement defines "Outlet Growth Targets" as "the operation by CRG of at least the following numbers of Outlets as of the end of the following respective years: third year – 200; fourth year – 250; fifth year – 400."

16.     "Outlets" is further defined on Page 2 of the Agreement as "all present and future Wendy's concept food service outlets operated by CRG and located in the District of Columbia or one of the states of the United States of America."

17.     Upon termination of the Agreement, the termination type affects the monetary amount owed by the terminating party. If CRG engages in a Permitted Termination, CRG is required to repay Pepsi only those funds advanced to CRG as provided for in the Agreement.

18.     In the case of a non-Permitted Termination, however, the Agreement purports to award Pepsi both the repayment of funds advanced to CRG and substantial liquidated damages.

3

19. On or about January 13, 2012, CRG and Pepsi amended the Agreement (the "Amendment").[1]

20. While the Amendment updated some variable funding provisions, it left intact the relevant provisions dealing with Default, CRG's Outlet Growth Targets, and CRG's Permitted Termination rights.

## CRG's Franchisor Moves to Coca-Cola Products

21. Shortly after CRG entered in the Agreement and the Amendment in 1998 and 2012 respectively, CRG's national franchisor, Wendy's, signed national contracts with Coca-Cola obligating franchisees to offer Coca-Cola fountain products.

22. CRG was a not a party to these contracts, and, in fact, Wendy's signed national contracts with Coca-Cola despite CRG's own lobbying and support of Pepsi's efforts to obtain national contracts with Wendy's.

23. Wendy's national move to Coca-Cola products has left CRG's franchises at a significant disadvantage compared to the rest of the Wendy's franchising system. Specifically, CRG (i) has received smaller marketing rebates than it otherwise would have received if it had been in alignment with Wendy's national standards; and (ii) has been prohibited from expanding into new markets. Moreover, CRG's inability to pour Coca-Cola products in conformity with Wendy's national franchising system has impaired CRG's relationships (and ability to coordinate) with Wendy's national advertising committee and CRG's fellow franchisees.

24. CRG's Agreement with Pepsi has also hurt CRG's sales and left CRG's Wendy's franchises out of alignment with Wendy's national promotional and advertising efforts which include Coca-Cola products. As a result, CRG been unable to utilize Wendy's national

---

[1] The Agreement and the Amendment are collectively referred to herein as the "Agreement" unless otherwise specified.

advertising and promotional material, instead having to devote significant time and resources in developing alternative promotional materials.

25.     Wendy's national move has also left CRG as one of the last remaining of a small and shrinking group of Wendy's franchisees pouring Pepsi's products. Indeed, CRG owns 50 of the 51 total remaining Wendy's restaurants pouring Pepsi products.

26.     As a result of CRG's franchises being out of alignment with Wendy's national franchising system, CRG has missed all Outlet Growth Targets as set forth in the Agreement.

27.     Moreover, CRG has missed numerous franchising expansion opportunities due to its compliance with the Agreement and its corresponding inability to conform to Wendy's national standards and pour Coca-Cola beverage products. Indeed, Wendy's has refused to approve any transfers of stores which would pour Pepsi to CRG following its national move to Coca-Cola products.

28.     Consequently, CRG determined that the 10,000,000 Gallon natural expiration Term of Agreement has already and would continue to severely and indefinitely limit CRG's ability to align itself with national franchising standards. Indeed, though the Term of the Agreement is defined as the later of ten years or 10,000,000 Gallons purchased, CRG has only been able to pour approximately one quarter of the required minimum amount after more than fifteen years. Thus, while the Agreement contains an alternative 2008 termination date, the Term of the Agreement (and Pepsi's exclusivity period) would not expire until 2089 – 75 years from now – at current rates of purchase if the parties were to continue under the Agreement.

29.     In light of the foregoing, CRG made a reasonable good faith determination that the continuation of the Agreement with Pepsi has and will continue to materially and adversely affect its ability to achieve Outlet Growth Targets.

5

### CRG Seeks Mutually Beneficial Termination of the Parties' Relationship

30.     On or about April 3, 2013, CRG mailed a letter to Pepsi expressing interest in reaching a mutually beneficial termination of the parties' relationship.

31.     In the April 2013 Letter, CRG notified Pepsi of the growing pressure to offer Coca-Cola products in its franchises and informed Pepsi that it was losing business opportunities due to its disconnect from the national franchising standards.

32.     Pepsi responded on or about June 24, 2013 and rejected CRG's offer. In doing so, Pepsi acknowledged that CRG had made additional purchases, which decreased the $2,353,517.50 unearned funds noted in the Amendment. Even so, Pepsi still unlawfully demanded CRG pay $2,637,000 as a termination payment, asserting that its higher amount incorporated all unspecified advanced funds.

33.     On or about March 11, 2014, CRG, through counsel, again contacted Pepsi seeking a mutually beneficial termination of the Agreement, effective June 30, 2014.

34.     On or about March 31, 2014, Pepsi sent a letter to CRG, through counsel, rejecting CRG's March 2014 offer.

35.     Pepsi elaborated on its rejection in a letter sent to CRG on or about May 27, 2014. In this letter, Pepsi *substantially increased* its unlawful termination payment demand by seeking $3,360,000. This amount was nearly $860,000 more than Pepsi's already-inflated June 2013 demand, despite the fact that CRG had continued to make purchases and reduce the amount of unearned funds throughout the past year. Pepsi also asserted that the advanced yet unearned fund amount was $2,500,000.

36.     Surprisingly, Pepsi's May 27, 2014 letter also asserted for the first time that Pepsi was entitled to $5,500,000 in liquidated damages under the Agreement.

6

37.     On or about June 3, 2014, CRG, through counsel, responded to Pepsi's May 27, 2014 letter. CRG reiterated its reasonable good faith determination that the agreement had and would continue to materially and adversely affect CRG's ability to achieve Outlet Growth Targets due to Wendy's national contract with Coca-Cola. CRG sought a Permitted Termination under the Agreement, precluding applicability of the liquidated damages clause.

38.     CRG also expressed concern in the June 3, 2014 Letter regarding Pepsi's calculation of the advanced yet unearned funds. Specifically, CRG disputed Pepsi's calculation of the advanced yet unearned advanced funds amount because Pepsi did not discount the funds to net present value as required by New York law and as provided for in the Agreement.

39.     On or about July 23, 2014, Pepsi responded to CRG's June 3, 2014 letter and again rejected CRG's offer. Pepsi again asserted that it was entitled to liquidated damages. Despite no previous mention in the preceding year or discussions between the parties, Pepsi also asserted for the first time that CRG could not engage in a Permitted Termination, alleging CRG's right to do so expired at the end of the Agreement's fifth year.

40.     Pepsi's refusal to recognize CRG's right to a Permitted Termination and refusal to discount the advanced yet unearned funds to net present value has harmed and will continue to harm CRG's future business prospects and profitability.

41.     Pepsi's demand for liquidated damages and inflated unearned advanced funds lacks any foundation under the parties' Agreement. Upon information and belief, Pepsi's demand was made for the purpose of intimidating CRG and coercing CRG into paying Pepsi sums of money to which it is not entitled under the Agreement.

42.     Accordingly, on November 4, 2014, CRG, through counsel, contacted Pepsi to (i) reiterate CRG's reasonable good faith determination that the Agreement had and would continue

7

to materially and adversely affect CRG's ability to achieve Outlet Growth Targets and (ii) provide Pepsi with written notice that CRG is exercising its right to terminate the Agreement pursuant to a Permitted Termination effective February 2, 2015.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

43. CRG re-alleges and incorporates herein by reference each of the allegations in the previous paragraphs 1 through 42 above.

44. CRG's Agreement with Pepsi is a valid and binding contract.

45. CRG has fully performed and continues to perform its contractual obligations under the Agreement as described herein. CRG has, for example, paid the requisite funds to Pepsi under the Agreement, honored the Agreement's exclusivity provision, and has made numerous good faith efforts to reach a mutually agreeable resolution. Nevertheless, while CRG has been willing to continue a dialogue to reach a mutually agreeable resolution, Pepsi has engaged in a pattern of deliberate delay and increasing and coercive demands for unlawful payments designed to frustrate CRG's right to exercise a Permitted Termination.

46. Pepsi's unsubstantiated refusal to recognize CRG's right to a Permitted Termination despite CRG's reasonable, good faith determination that the continuation of the Agreement has already and will continue to materially and adversely affect CRG's ability to achieve its Outlet Growth Targets is a material and aggravated breach of Pepsi's duties under the Agreement.

47. Pepsi's unsubstantiated demand for an unlawful liquidated damage payment from CRG for a non-Permitted Termination despite CRG's reasonable, good faith determination that the continuation of the Agreement has already and will continue to materially and adversely

8

affect CRG's ability to achieve its Outlet Growth Targets is a material and aggravated breach of Pepsi's duties under the Agreement

48.    Pepsi's unreasonable refusal to discount the advanced yet unearned funds to net present value is also a material and aggravated breach of Pepsi's contractual duties under the Agreement and its choice of law provision.

49.    As a direct and foreseeable consequence of Pepsi's material and aggravated breach of the Agreement, CRG has sustained damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

50.    CRG re-alleges and incorporates herein by reference each of the allegations in the previous paragraphs 1 through 49 above

51.    Every contract contains an implied covenant of good faith and fair dealing, which embraces a pledge that neither party will interfere with another party's enjoyment of its contractual rights and benefits.

52.    Pepsi denied CRG contractual benefits by:  (i) refusing to recognize CRG's right to a Permitted Termination; (ii) demanding unlawful payments from CRG; and (iii) refusing to recognize CRG's right to a discount to net present value on the advanced yet unearned funds as provided for in the Agreement.

53.    Pepsi's conduct as described herein constitutes a breach of the implied covenant of good faith and fair dealing.

54.    Pepsi's breach of the implied covenant of good faith and fair dealing proximately caused CRG monetary damage in an amount to be determined at trial.

9

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment)

55.     CRG re-alleges and incorporates herein by reference each of the allegations in the previous paragraphs 1 through 54 above.

56.     There exists a real and justiciable controversy between the parties over CRG's rights and liabilities under the Agreement.

57.     CRG respectfully seeks a declaratory judgment from the Court, based on the facts alleged and to be established, that CRG is entitled to a Permitted Termination under the Agreement.

58.     CRG further respectfully seeks a declaratory judgment from the Court, based on the facts alleged and to be established, that CRG is entitled to a net present value discount on the advanced yet unearned funds as provided for in the Agreement

## FOURTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices – N.C. Gen. Stat. § 75-1.1)

59.     CRG re-alleges and incorporates herein by reference each of the allegations in the previous paragraphs 1 through 63 above.

60.     As described herein, Pepsi has engaged in unfair and deceptive trade practices as proscribed by N.C. Gen. Stat. § 75-1.1.

61.     Pepsi's conduct is immoral, unethical, oppressive, unscrupulous, and/or injurious to CRG.

62.     Pepsi's refusal to recognize CRG's right to: (i) a Permitted Termination; and (ii) a net present value discount on the advanced yet unearned funds constitutes an inequitable assertion of power over CRG.

10

63.    Pepsi's unlawful demands for payment from CRG constitute an aggravated breach of contract and an inequitable assertion of power over CRG.

64.    Pepsi's business selling postmix fountain beverage products to CRG is "in or affecting commerce" within the meaning of N.C. Gen. Stat. § 75-1.1 of the North Carolina General Statutes.

65.    As a result of Pepsi's conduct, CRG is entitled to an award of treble damages.

### FIFTH CLAIM FOR RELIEF
### (Unlawful Restraint on Trade – N.C. Gen. Stat. § 75-1)

66.    CRG re-alleges and incorporates herein by reference each of the allegations in the previous paragraphs 1 through 65 above.

67.    The Agreement unreasonably restrained CRG's trade in violation of N.C. Gen. Stat. § 75-1, wherein the exclusivity clause bound CRG for an unreasonable amount of time.

68.    Pepsi's conduct in refusing to recognize CRG's right to: (i) a Permitted Termination; and (ii) a net present value discount on the advanced yet unearned funds unreasonably restrained CRG's trade in violation of N.C. Gen. Stat. § 75-1.

69.    Pepsi's restraint of CRG's trade proximately caused injury to CRG as described herein.

70.    As a result of Pepsi's conduct, CRG is entitled to an award of treble damages.

### TRIAL BY JURY

CRG hereby demands a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, CRG demands judgment against Defendant Pepsi as follows:

1.    On Count I for actual damages in an amount to be proved at trial;

11

2.    On Count II for punitive damages and actual damages in an amount to be proved at trial;

3.    On Count III for a declaration that CRG can engage in a Permitted Termination;

4.    On Count IV for treble damages arising out of Defendant's unfair and deceptive trade practices;

5.    On Count V for treble damages arising out of Defendant's unlawful restraint of trade;

6.    For prejudgment and post-judgment interest at the maximum rate allowable by law;

7.    For the costs of prosecuting this action;

8.    For reasonable attorneys' fees; and

9.    For such other relief as this court deems just and proper.


Respectfully submitted this the 4th day of November, 2014

McGuireWoods LLP


Brian A. Kahn
State Bar No.: 29291
Brian P. Troutman
State Bar No.: 40131
McGuireWoods LLP
201 North Tryon Street, Suite 3000 (28202)
Post Office Box 31247
Charlotte, North Carolina 28231
Telephone Number:    704.343.2000
Telecopy Number:    704.343.2300

*Attorneys for Plaintiff Carolina Restaurant Group, Inc.*

12

 CT Corporation

**TO:** Pepsop Intakeparalegal
PepsiCo, Inc.
700 Anderson Hill Rd
Purchase, NY 10577-1444

**RE:** **Process Served in North Carolina**

**FOR:** PepsiCo Sales, Inc. (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Carolina Restaurant Group, Inc., Pltf. vs. PepsiCo Sales, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Letter(s), Affidavit, Certificate of Service, Exhibit(s) |
| **COURT/AGENCY:** | Mecklenburg County Superior Court, NC<br>Case # 14CVS20175 |
| **NATURE OF ACTION:** | Affidavit of Service by Certified Mail |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Raleigh, NC |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 11/24/2014 postmarked on 11/19/2014 |
| **JURISDICTION SERVED :** | North Carolina |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Brian P. Troutman<br>McGuire Woods LLP<br>201 North Tryon Street<br>Suite 3000 (28202)<br>Charlotte, NC 28231<br>704-343-2000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/25/2014, Expected Purge Date: 11/30/2014<br>Image SOP<br>Email Notification, Pepsop Intakeparalegal PEPSOPintakeparalegal@pepsico.com<br>Email Notification, Erika Greenberg Erika.greenberg@pepsico.com |
| **SIGNED:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | C T Corporation System<br>150 Fayetteville St.<br>Box 1011<br>Raleigh, NC 27601<br>919-821-7139 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Case 3:14-cv-00668-GCM   Document 1-1   Filed 12/02/14   Page 16 of 24

 CT Corporation

**TO:** Pepsop Intakeparalegal
PepsiCo, Inc.
700 Anderson Hill Rd
Purchase, NY 10577-1444

**RE:** **Process Served in North Carolina**

**FOR:** PepsiCo Sales, Inc. (Domestic State: DE)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| Letter, Summons, Return, Complaint | By Certified Mail on 11/10/2014 postmarked on 11/04/2014 | Pepsop Intakeparalegal PepsiCo, Inc. | 526052126 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Case 3:14-cv-00668-GCM   Document 1-1   Filed 12/02/14   Page 17 of 24

FIRST-CLASS MAIL
neopost™
11/19/2014
US POSTAGE $001.40⁹

ZIP 28202
041L12203391

From: Brian P. Troutman

‖McGUIREWOODS

201 North Tryon Street | Charlotte, NC 28202

To:    PepsiCo Sales, Inc.
       c/o CT Corporation System, Registered Agent
       150 Fayetteville Street, Box 1011,
       Raleigh, North Carolina  27601

**McGuireWoods LLP**
Fifth Third Center
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
Tel 704.343.2000
Fax 704.343.2300
www.mcguirewoods.com

**Brian P. Troutman**
Direct: 704.343.2263

# McGUIREWOODS

btroutman@mcguirewoods.com
Direct Fax: 704.353.6177

November 19, 2014

### BY FIRST CLASS U.S. MAIL

PepsiCo Sales, Inc.
c/o CT Corporation System, Registered Agent
150 Fayetteville Street, Box 1011,
Raleigh, North Carolina 27601

      Re:    *Carolina Restaurant Group, Inc. v. PepsiCo Sales, Inc.*
               **Mecklenburg County Superior Court Case No. 14-CVS-20175**

Dear Sir:

In accordance with the North Carolina Rules of Civil Procedure, we enclose herewith and serve upon you a true and accurate copy of the Affidavit of Service by Certified Mail, which has been filed in the above-referenced matter.

Very truly yours,

MCGUIREWOODS LLP

Brian P. Troutman

BPT/ecw

Enclosure

Atlanta | Austin | Baltimore | Brussels | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London
Los Angeles | New York | Norfolk | Pittsburgh | Raleigh | Richmond | Tysons Corner | Washington, D.C. | Wilmington

**McGuireWoods LLP**
Fifth Third Center
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
Tel 704.343.2000
Fax 704.343.2300
www.mcguirewoods.com

**Brian P. Troutman**
Direct: 704.343.2263

btroutman@mcguirewoods.com
Direct Fax: 704.353.6177

## McGUIREWOODS

November 19, 2014

***VIA HAND DELIVERY***

Martha H. Curran
Clerk of Superior Court
Mecklenburg County Courthouse
832 East Fourth Street
Charlotte, NC 28202

> **Re:** ***Carolina Restaurant Group, Inc. v. PepsiCo Sales, Inc.***
> **Mecklenburg County Superior Court Case No. 14-CVS-20175**

Dear Ms. Curran:

We enclose for filing an original and one copy of the Affidavit of Service. Please file the original and return a file-stamped copy to us with our courier.

Thank you for your assistance.

Sincerely,

MCGUIREWOODS LLP

*Brian P. Troutman*

Brian P. Troutman

BPT/ecw
Enclosures
cc (w/enclosure): PepsiCo Sales, Inc.

Atlanta | Austin | Baltimore | Brussels | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London
Los Angeles | New York | Norfolk | Pittsburgh | Raleigh | Richmond | Tysons Corner | Washington, D.C. | Wilmington

Case 3:14-cv-00668-GCM   Document 1-1   Filed 12/02/14   Page 20 of 24

FILED

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE

2014 NOV 19   AM 11: 17 SUPERIOR COURT DIVISION

COUNTY OF MECKLENBURG        14-CVS-20175

MECKLENBURG CO. C.S.C.

CAROLINA RESTAURANT GROUP, INC.,

    *Plaintiff,*

v.                                **AFFIDAVIT OF SERVICE**
                                     **BY CERTIFIED MAIL**

PEPSICO SALES, INC.

    *Defendant.*

Brian P. Troutman, being first duly sworn, deposes and says:

1.      I am the attorney for the Plaintiff in the above-entitled action which has been instituted in North Carolina Superior Court of Mecklenburg County. I am over eighteen years of age and competent to make this Affidavit.

2.      A copy of the Summons issued November 4, 2014 and Complaint filed November 4, 2014 was deposited with the United States Post Office for mailing by certified mail, return receipt requested, addressed to Defendant PepsiCo Sales, Inc., c/o CT Corporation System, Registered Agent, 150 Fayetteville Street, Box 1011, Raleigh, North Carolina 27601.

3.      A copy of the Summons issued November 4, 2014 and Complaint filed November 4, 2014 was served on Defendant PepsiCo Sales, Inc., c/o CT Corporation System, Registered Agent, on November 10, 2014, as evidenced by the signed original receipt card from the U.S. Post Office, attached hereto as **Exhibit A** and incorporated herein by reference.

I have read the foregoing and it is true and accurate to the best of my knowledge.

This the 19th day of November, 2014.

_Brian P. Troutman_
Brian P. Troutman

Sworn to and subscribed before me
this the 19 day of November, 2014.



Notary Public _____ **J Roy Parker**

My Commission Expires: _____ **February 14, 2016**

[NOTARIAL SEAL]

J. ROY PARKER
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
February 14, 2016

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the **AFFIDAVIT OF SERVICE BY CERTIFIED MAIL** was served by depositing a copy of same in the U.S. Mail, postage prepaid, to the following:

PepsiCo Sales, Inc.
c/o CT Corporation System, Registered Agent
150 Fayetteville Street, Box 1011,
Raleigh, North Carolina 27601

This the _19th_ day of November, 2014.

Brian P. Troutman (N.C. Bar No. 40131)
Brian A. Kahn (N.C. Bar No. 29291)
MCGUIREWOODS LLP
201 N. Tryon Street, Suite 3000 (28202)
Post Office Box 31247
Charlotte, North Carolina 28231
Telephone: 704.343.2000
Facsimile: 704.343.2300
*Attorney for Plaintiff*
*Carolina Restaurant Group, Inc.*

3

# EXHIBIT A

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X *Holly Frost* ☐ Agent ☐ Addressee<br>B. Received by (*Printed Name*)    C. Date of Delivery *11·10·14* |
| 1. Article Addressed to:<br><br>PepsiCo Sales, Inc.<br>c/o CT Corporation System, Register Age<br>150 Fayetteville Street, Box 1011,<br>Raleigh, North Carolina 27601 | D. Is delivery address different from item 1? ☐ Yes<br>    if YES, enter delivery address below: ☐ No<br><br><br>3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☑ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7005 0390 0004 6152 0080 |

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540